Veronika Fabian, State Bar 018770
Hyung S. Choi, State Bar 015669
CHOI & FABIAN, PLC
90 S. Kyrene Rd., Suite #5
Chandler, Arizona  85226
tel:  (480) 517-1400
fax: (480) 517-6955
hyung@choiandfabian.com
veronika@choiandfabian.com
 Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Hebert,<br><br>Plaintiff,<br>vs.<br><br>Master Financial Group, Inc.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES** |

## INTRODUCTION

1. Defendant Master Financial Group, Inc. ("Master Financial") has improperly attempted to collect a disputed debt from Plaintiff Douglas Hebert by communicating with his employer regarding the debt, mischaracterizing the the character and amount of the debt, and continuing to report the debt on his credit report.   Mr. Hebert brings this action to remedy Master Financial's violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and invasion of privacy.

**JURISDICTION AND VENUE**

2. Jurisdiction of this Court arises under 15 U.S.C. §§1692k(d), 1681(p); and 28 U.S.C. §1337(a).

3. The transaction from which this complaint arises occurred in Maricopa County, Arizona and thus this Court has personal jurisdiction over Defendant and venue is proper. 28 U.S.C. § 1391.

**PARTIES**

4. Plaintiff Douglas Hebert ("Mr. Hebert") is a natural person residing in Maricopa County, Arizona.

5. Mr. Hebert is an individual and thus a "consumer" as defined by § 1681a(c) of the FCRA.

6. Defendant Master Financial is an Arizona corporation.

7. Master Financial is a licensed debt collector in the state of Arizona.

8. Master Financial regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to another.

9. Master Financial is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

**FACTUAL ALLEGATIONS**

10. Mr. Hebert is a 36-year old art teacher at Hurley Ranch Elementary in Avondale, Arizona.

11. In 2010, Mr. Hebert entered into a lease with Newport Apartments Owner, LLC ("Newport Apartments") to live in Apartment No. 11-123, at 1333 N. Dysart Rd., Avondale, AZ 85323 ("the apartment").

12. His monthly rent was $679.00 per month.

13. After he moved in, Mr. Hebert's apartment was burglarized on May 26, 2011.

14. Many items were stolen including the keys to his vehicle, which was subsequently wrecked and destroyed.

15. Nevertheless, Mr. Hebert stayed in the apartment believing that it was an isolated incident.

16. In June of 2012, Mr. Hebert signed a lease with Newport Apartments for the period between August 1, 2012 to September 30, 2012.  (Lease Contract and Addendum is attached as Exh. A).

17. The monthly rental charge remained $679.00.

18. According to the lease, his monthly rent was due on the 2nd of every month.

19. Although the lease was dated August 1, 2012, Mr. Hebert actually signed it in June of 2012 before leaving for an extended trip to visit his family in Michigan.

20. Mr. Hebert wanted to make sure he had someplace to live when he returned from Michigan.

21. While Mr. Hebert was in Michigan, his apartment was burglarized on July 27, 2012.

22. Mr. Hebert returned on July 28, 2012 and learned of the burglary from Newport Apartments.

23. His neighbor, Amanda, filed a police report on July 27, 2012.

24. The apartment had also been damaged during the burglary.

25. Because this was the second time the apartment had been burglarized, Mr. Hebert no longer felt safe and decided to move out.

26. He went to the office to give notice that he was moving out.

27. Although he went to the office during office hours on two separate occasions, no one was there to accept his notice.

28. On August 3, 2012, Mr. Hebert removed his property from the apartment.

29. Shortly thereafter, Mr. Hebert put his keys to the apartment in Newport Apartments' mail box.

30. On August 3, 2012, Newport Apartments sent Mr. Hebert "Five(5) Day Notice) stating:

> As of 8/1/2012, rent for the possession of the above-referenced premises was in arrears in the amount of

4

> $749.78, plus the applicable late charges of $76.88 to date as provided in your lease agreement, plus a service fee of $25.63, for a total due in rent plus applicable charges (through the date of this notice) of $852.29. If this amount is not paid by today, late charges will continue to accrue at $10.25 per day until the entire balance reference above is paid in full.

(Letter attached as Exh. B).

31. Mr. Hebert's rent was $679.00 a month, not $749.78 per month.

32. Additionally, according to the lease agreement, Mr. Hebert's rent was only considered late if it was not received on before the 2nd of each month.

33. The lease agreement provided for a one-time late charge of $75.00 plus $10.00 per day, not $76.88 and $10.25 as indicated by Newport's letter.

34. Either way, such late charges were not reasonable as required by the Arizona Landlord Tenant Act. A.R.S. § 33-1368.

35. On August 6, 2012, Newport Apartments sent Mr. Hebert a notice that the balance due, after application of his deposit, was $2,683.53. (August 6, 2012, Final collection letter attached as Exh. C).

36. In that letter, Newport Apartments wrote that "[d]ue to the severe delinquency on this account, your file has been sent to: Master Financial Group, Inc. for collection of this debt and a 50% collection fee has been added to your account balance due."

37. In that letter, Newport Apartments included an itemization of the amount it claimed was due.

38. That itemization showed fees totaling $2,833.54.

39. Those fees included a variety of improper fees including, but not limited to:

   a. A $75.00 late fee assessed on August 3, 2012.

   b. A $30.00 late fee assessed on August 6, 2012.

   c. A $15.00 fee for missing keys.

   d. A re-letting Fee of $679.00.

   e. A term of lease charges for $1,358.00 (2 months rent).

40. Newport Apartments also charged Mr. Hebert for damage done to the apartment during the burglary.

41. On August 13, 2012, Master Financial sent Mr. Hebert an itemization of his account, showing $4,025.30 as "principal."  (August 13, 2012 collection letter attached as Exh. D).

42. Apparently, Master Financial had added an additional 50% for collection fees, based on the already inflated move out fees, and mischaracterized that collection fee as "principal".

43. With the exception of late charges, nowhere in the lease agreement did Mr. Hebert agree to pay a collection fee.

44. On August 14, 2012, Master Financial sent Mr. Hebert a collection letter, again identifying the principal of $4,025.30, as for "RENT, CLEAN, DAMAGES." (August 14, 2012 collection letter attached as Exh. E)

45. In its August 14, 2012 letter, Master Financial included the following language mandated by the FDCPA, 15 U.S.C. § 1692g notice:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, our office will assume the debt is valid. If you notify us in writing within 30 days from receiving this notice, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request to our office, in writing within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

46. Mr. Hebert contacted Master Financial and orally informed it that the debt was disputed and that he had moved out on August 4, 2012 because the apartment had been burglarized.

47. Mr. Hebert also informed Master Financial that he only had a two-month lease.

48. Mr. Hebert even faxed Master Financial records of the amounts he had paid.

49. Nevertheless, Master Financial continued to attempt to collect $4,025.30 from Mr. Hebert.

50. On October 2, 2012, Master Financial sent Mr. Hebert a "48 HOUR NOTICE" stating that "IF YOU REMIT WITHIN 48 HOURS, NO ACTION WILL BE TAKEN." (48 Hour Notice attached as Exh. F).

51. On October 17, 2012, Master Financial sent Mr. Hebert a letter stating "your account has been referred for processing. In a percentage of cases referred to us, we find it necessary to resort to legal proceedings through attorneys and civil courts." (October 17, 2012 letter attached as Exh. G).

52. Master Financial also sent a letter directly to the personnel department of Hurley Ranch Elementary seeking to verify the employment of Douglas Hebert. (Letter to Hurley Ranch Elementary attached as Exh. H).

53. In that letter, Master Financial identified itself as "A LICENSED ARIZONA COLLECTION AGENCY and stated that "THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

54. Master Financial requested that Hurley Ranch Elementary provide information regarding the date he was hired, his job classification, his current wages, any current garnishments, and date terminated.

55. An employee from the personnel department informed Mr. Hebert of the letter.

56. Mr. Hebert was embarrassed and aggravated as he did not believe he owed the money.

57. In October of 2012, Master Financial reported the item on Mr. Hebert's Experian credit report as a derogatory item, with a balance owed of $4,025.00.

58. Master Financial did not list the account as disputed when it reported the account.

59. In November of 2012, Mr. Hebert sent a letter to Experian disputing the debt. (Copy of the letter attached as Exh. I).

60. In that letter, he explained that he had been forced to move out of the apartment because of burglary but that in any event, he disputed the amount of the alleged debt.

61. Upon information and belief, Experian forwarded that dispute to Master Financial.

62. Upon information and belief, Master Financial did not conduct a reasonable investigation of Mr. Hebert's dispute.

63. Upon information and belief, Master Financial verified the alleged debt to Experian.

64. Experian then sent Mr. Hebert a response stating that the Master Financial item would remain. (Experian's results of investigation attached as Exh. J).

9

65. In January of 2013, Mr. Hebert sent a second dispute to Experian regarding the Master Financial item on his credit report.

66. In January of 2013, Experian informed Mr. Hebert that it had already investigated the item and the credit grantor had verified its accuracy. (Experian's letter of 2/12/13 attached as Exh. K).

67. As of the date of this filing, Experian continues to report the account on Mr. Hebert's credit report.

68. On January 28, 2013, Ranch Elementary School received yet another letter from Master Financial seeking to verify Mr. Hebert's employment.

69. Yet again, Master Financial identified itself as a collection agency and stated that the letter was an "attempt to collect a debt."

70. In March of 2013, Mr. Hebert applied for an American Express Credit Card.

71. Mr. Hebert was denied credit by American Express based on information in his Experian credit report.  (Copy of denial letter is attached as Exh. L).

72. Upon information and belief, Mr. Hebert was denied credit because of the master Financial item on his credit report.

**CAUSE OF ACTION NO. 1: VIOLATION OF THE FDCPA**

73. Defendants' acts and omissions constitute violations of the FDCPA, including, but not limited to:

a. The use of false, deceptive, or misleading representations or means in connection with the collection of a debt; 15 U.S.C. § 1692e;

b. Misrepresenting the character, amount, or legal status of the debt; 15 U.S.C. § 1692e(2)(A);

c. Misrepresenting "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B).

d. Communicating with Mr. Hebert's employer without Mr. Hebert's express consent or to acquire location information pursuant to 15 U.S.C. § 1692b.  15 U.S.C. § 1692c(b).

e. The collection of any amount including any interest, fee, charge, or expense incidental to the principal obligation unless such amount is expressly authorized by the agreement creating the debt or permitted by the law.  15 U.S.C. § 1692f(1).

f.  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; 15 U.S.C. § 1692e(10); and,

g. The use of unfair or unconscionable means to collect or attempt to collect any debt; 15 U.S.C. § 1692f without permission and not in accordance with 15 U.S.C. § 1692b(5).

74. As a result of Master Financial's violations of the FDCPA, Mr. Hebert suffered damages in an amount to be determined by this Court.

75. Master Financial is therefore liable to Mr. Hebert in the amount of Mr. Hebert's actual damages, statutory damages in the amount of $1,000, costs, and attorney's fees. 15 U.S.C. § 1692k(a).

### CAUSE OF ACTION NO. II: VIOLATION OF THE FCRA

76. In the entire course of its action, Master Financial willfully and/or negligently violated the provisions of the FCRA in the following respects:

    a. By failing to conduct a reasonable investigation upon Mr. Hebert's disputes of the incorrect reporting on his credit report. 15 U.S.C. § 1681s-2(b).

77. As a result of Master Financial's failure to comply with the FCRA, Mr. Hebert has suffered damages in an amount to be determined by this Court.

78. Mr. Hebert is therefore entitled to recover actual or statutory damages, whichever is greater, punitive damages, costs, and attorney's fees. 15 U.S.C. § 1681n.

### CAUSE OF ACTION NO. III: INVASION OF PRIVACY

79. Master Financial's debt collection efforts with respect to Mr. Hebert were unreasonable.

80. Consequently, Defendant's acts and omissions constitute an invasion of privacy.

81. As a result of Defendant's invasion of privacy, Mr. Hebert suffered damages in an amount to be determined by this Court.

82. In invading Mr. Hebert's privacy, Defendant acted with an evil mind, intending to injure Mr. Hebert or consciously disregarding the substantial risk that its conduct would cause significant harm to Mr. Hebert.

83. Mr. Hebert is therefore entitled to recover both actual and punitive damages.

## JURY DEMAND

84. Mr. Hebert demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief against Master Financial:

    a)    Actual damages;

    b)    Statutory damages;

    c)    Punitive damages;

    c)    Attorney's fees; and

    d)    Costs.

RESPECTFULLY SUBMITTED April 19, 2013.

CHOI & FABIAN, PLC

/s/ Veronika Fabian
Veronika Fabian
Attorneys for Plaintiff